CHARLES SWAN AND JOSEPHINE SWAN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1271–62. Filed April 23, 1964.

*Charles F. Hartsock*, for the petitioners.
*W. Dean Short*, for the respondent.

296

OPINION

RAUM, *Judge:* The Commissioner determined that "your receipt of $40,000.00 in cash from the Swan Construction Company in exchange for the stock of Charles Associates, Inc., constitutes a taxable dividend in accordance with the provisions of Section 301, 302, 304, 316 and 318 of the Internal Revenue Code of 1954." [1]

There is no dispute between the parties that the purchase of petitioners' Charles, Inc., stock by Swan, Inc., falls literally within the words of section 304 of the 1954 Code, so that the distribution by Swan, Inc., is to be treated as though it were redeeming its own stock.[2]

---

[1] The record shows that petitioners received $39,800 rather than $40,000 in exchange for their stock, and the Commissioner concedes on brief that the deficiency should be revised downward to reflect the difference.

[2] SEC. 304. REDEMPTION THROUGH USE OF RELATED CORPORATIONS.

  (a) TREATMENT OF CERTAIN STOCK PURCHASES.—

    (1) ACQUISITION BY RELATED CORPORATION (OTHER THAN SUBSIDIARY).—For purposes of sections 302 * * *, if—

      (A) one or more persons are in control of each of two corporations, and

      (B) in return for property, one of the corporations acquires stock in the other corporation from the person (or persons) so in control,

then * * * such property shall be treated as a distribution in redemption of the stock of the corporation acquiring such stock. * * *

There is also no dispute that such redemption is covered by section 302(d) [3] and hence is taxable as a dividend under section 301 [4] unless the redemption "is not essentially equivalent to a dividend" under section 302(b)(1).[5]

Petitioners' primary position seeks to cut across these exasperatingly complex provisions, cf. *Thomas G. Lewis*, 35 T.C. 71, 76. They contend that they never in fact owned any Charles, Inc., stock, that they never sold any such stock to Swan, Inc., and that therefore the foregoing statutory provisions have no application at all to this case. They argue that Swan, Inc., was the real owner of the Charles, Inc., stock from the beginning, that petitioner had lent $40,000 to Swan, Inc., to buy that stock, that the stock was issued in petitioners' names merely to secure that loan, and that the redemption of the Charles, Inc., stock was nothing more than the repayment of that debt. We cannot agree. The burden of proof is upon petitioners. The record that they made before us is highly confusing, the evidence upon which they rely is unconvincing and at times contradictory, and their position conflicts in important respects with the stipulation of facts filed by the parties. We hold that they have failed to carry their burden of proof.

Petitioners make a related argument that the August 17, 1955, redemption of the Charles, Inc., stock was in substance only a "final

---

[3] Sec. 302(d) is applicable only if the redemption does not fall within sec. 302(a). Sec. 302 provides in part as follows:

SEC. 302. DISTRIBUTIONS IN REDEMPTION OF STOCK.

(a) GENERAL RULE.—If a corporation redeems its stock (within the meaning of section 317(b)), and if paragraph (1), (2), (3), or (4) of subsection (b) applies, such redemption shall be treated as a distribution in part or full payment in exchange for the stock.

(b) REDEMPTIONS TREATED AS EXCHANGES.—

(1) REDEMPTIONS NOT EQUIVALENT TO DIVIDENDS.—Subsection (a) shall apply if the redemption is not essentially equivalent to a dividend.

(2) SUBSTANTIALLY DISPROPORTIONATE REDEMPTION OF STOCK.—

\* \* \* \* \* \* \*

(3) TERMINATION OF SHAREHOLDER'S INTEREST.—\* \* \*

(4) STOCK ISSUED BY RAILROAD CORPORATIONS IN CERTAIN REORGANIZATIONS.—\* \* \*

(5) APPLICATION OF PARAGRAPHS.—In determining whether a redemption meets the requirements of paragraph (1), the fact that such redemption fails to meet the requirements of paragraph (2), (3), or (4) shall not be taken into account. \* \* \*

(c) CONSTRUCTIVE OWNERSHIP OF STOCK.—

(1) IN GENERAL.—Except as provided in paragraph (2) of this subsection, section 318(a) shall apply in determining the ownership of stock for purposes of this section.

\* \* \* \* \* \* \*

(d) REDEMPTIONS TREATED AS DISTRIBUTIONS OF PROPERTY.—Except as otherwise provided in this subchapter, if a corporation redeems its stock (within the meaning of section 317(b)), and if subsection (a) of this section does not apply, such redemption shall be treated as a distribution of property to which section 301 applies.

[4] SEC. 301. DISTRIBUTIONS OF PROPERTY.

(a) IN GENERAL.—Except as otherwise provided in this chapter, a distribution of property (as defined in section 317(a)) made by a corporation to a shareholder with respect to its stock shall be treated in the manner provided in subsection (c).

\* \* \* \* \* \* \*

(c) AMOUNT TAXABLE.—In the case of a distribution to which subsection (a) applies—

(1) AMOUNT CONSTITUTING DIVIDEND.—That portion of the distribution which is a dividend (as defined in section 316) shall be included in gross income.

[5] Petitioners concede that the redemption is not within sec. 302(b) (2), (3), or (4).

settlement of salary due" to petitioner Charles Swan on which income taxes had already been paid, citing *Estate of Henry A. Golwynne*, 26 T.C. 1209.. This contention is spurious. True, petitioner held uncashed salary checks of Swan, Inc., in the aggregate amount of $39,-377.80 upon which he had paid taxes. But he cashed those checks on January 25, 1954, and on that date used the proceeds, together with some other funds, to purchase a $40,000 cashier's check which subsequently found its way into the Virginia real estate development venture. The canceled salary checks are in evidence, and the word "Paid" is perforated on each one of them, as is also the date "1–25–54." The fact that he invested the proceeds of the salary checks shortly thereafter in the Virginia real estate development hardly justifies characterizing the August 17, 1955, redemption as a "final settlement" of the salary due to petitioner. He in fact received that salary long before the redemption. The *Golwynne* case is clearly distinguishable.[6]

Contrary to petitioners' position, section 302(b)(1) is squarely involved, and the Commissioner's determination must be sustained unless the redemption was "not essentially equivalent to a dividend." Swan, Inc., had a large surplus at the time of its purchase of the Charles, Inc., stock from petitioners, and petitioners in no realistic way parted with their control over or their actual interest or investment in the Charles, Inc., enterprise, for, apart from qualifying shares, they were the sole stockholders of Swan, Inc.[7] In substance, the redemption was nothing more than a distribution of cash to them by Swan, Inc., out of its accumulated earnings and profits. Nor are we satisfied on the record that there was a bona fide business reason for the redemption. And in

---

[6] In *Golwynne*, 26 T.C. 1209, 1212, the petitioner successfuly contended that "* * * when the corporation eventually redeemed the stock, it was merely completing the initial transaction of repaying the notes," whereas here we have found as a fact that petitioners transferred, as owners, stock of Charles, Inc., to Swan, Inc. Petitioner's use of the uncashed salary checks of Swan, Inc., to acquire the stock of Charles, Inc., does not place this case on any different footing than if he had used other funds to acquire the stock. Sec. 304 is in point and the net effect of this transaction was that of a redemption.

[7] See SEC. 318. CONSTRUCTIVE OWNERSHIP OF STOCK.

    (a) GENERAL RULE.—For purposes of those provisions of this subchapter to which the rules contained in this section are expressly made applicable—

    \*         \*         \*         \*         \*         \*         \*

    (2) PARTNERSHIPS, ESTATES, TRUSTS, AND CORPORATIONS.—

    \*         \*         \*         \*         \*         \*         \*

    (C) CORPORATIONS.—If 50 percent or more in value of the stock in a corporation is owned, directly or indirectly, by or for any person, then—

        (i) such person shall be considered as owning the stock owned, directly or indirectly, by or for that corporation, in that proportion which the value of the stock which such person so owns bears to the value of all the stock in such corporation; and

        (ii), such corporation shall be considered as owning the stock owned, directly or indirectly, by or for that person.

any event, the existence of a business purpose will not, of itself, require that the transaction be classified as "not essentially equivalent to a dividend." Cf. *United States* v. *Fewell*, 255 F. 2d 496, 500 (C.A. 5); *Bradbury* v. *Commissioner*, 298 F. 2d 111, 118 (C.A. 1), affirming a Memorandum Opinion of this Court; *Thomas Kerr*, 38 T.C. 723, 732, affirmed 326 F. 2d 225 (C.A. 9).

In arguing that the distribution was not essentially equivalent to a dividend, petitioners refer to the contraction of the heavy construction business of Swan, Inc., thereby seeking to establish that the distribution was in liquidation or partial liquidation of Swan, Inc. While it is true that Swan, Inc., began to discontinue its heavy construction business as early as 1952, it subsequently entered the mortgage loan business and by absorbing Charles, Inc., it also continued the latter's venture. And there is no showing that its need for capital in its new activities was materially less than in the heavy construction business. Cf. *Estate of Charles Chandler*, 22 T.C. 1158, 1166, affirmed 228 F. 2d 909 (C.A. 6). Moreover, there is no convincing evidence that the August 1955 redemption was in any way related to the termination of the heavy construction business. We hold that petitioners have failed to establish that the redemption was not essentially equivalent to a taxable dividend. Cf. *United States* v. *Fewell*, 255 F. 2d 496, 499–500 (C.A. 5); *Ferro* v. *Commissioner*, 242 F. 2d 838, 841 (C.A. 3); *Flanagan* v. *Commissioner*, 116 F. 2d 937, 939 (C.A. D.C.); *Jones* v. *Griffin*, 216 F. 2d 885, 887 (C.A. 10); *Thomas Kerr*, 38 T.C. 723, 729–730, affirmed 326 F. 2d 225 (C.A. 9); *Genevra Heman*, 32 T.C. 479, 487, affirmed 283 F. 2d 227 (C.A. 8). We have viewed all the evidence before us in the light of the various criteria regarded as pertinent in the foregoing cases and have concluded that the redemption distribution herein must be regarded as essentially equivalent to a taxable dividend.

*Decision will be entered under Rule 50.*